UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MICHAEL BREW,

                                          Plaintiff,

   -against-                                                            9:07-CV-446 (LEK/ATB)

LAURA PREBBLE, Nurse Administrator;
DR. JOSHUA ROSENFELD; and NURSE KAREN
COLE, of the Greene Correctional Facility,

                                          Defendants.
_____

### MEMORANDUM-DECISION AND ORDER[1]

Plaintiff, Michael Brew ("Plaintiff"), a former inmate under the custody and care of the New York State Department of Correctional Services, commenced this action in March 2007 in the Southern District of New York. Plaintiff's case was subsequently transferred to this Court on April 25, 2007. Plaintiff's Amended Complaint, (Dkt. No. 2), brought pursuant to 42 U.S.C. § 1983, alleges that Nurse Administrator Laura Prebble ("Prebble"), Dr. Joshua Rosenfeld ("Rosenfeld"), and Nurse Karen Cole ("Cole") (collectively, "Defendants") of the Greene Correctional Facility violated Plaintiff's constitutional rights under the Eighth Amendment through their deliberate indifference to his serious medical condition. Plaintiff seeks damages for the alleged violation. Presently before the Court is Defendants' Motion for summary judgment seeking dismissal of Plaintiff's action. Dkt. No. 19.

**I.    BACKGROUND**

In March 2004, Plaintiff was an inmate in the care and custody of the New York State

---

[1]For printed publication in the Federal Reporter

1

Department of Correctional Services ("DOCS"), residing at the Greene Correctional Facility ("Greene") in Coxsackie, New York.[2] Am. Compl. ¶ 5. On March 11, 2004, Plaintiff was allegedly assaulted by two inmates in retaliation for his giving testimony against a correction officer in a disciplinary proceeding. Brew Dep. (Dkt. No. 19-4) at 15-22. The alleged assault occurred when the two inmates called Plaintiff into a room and then beat him on his head with a broom, knocking him unconscious. Id. Plaintiff woke up with a head laceration; the inmates were still present and told him not to tell anyone of the assault. Id. Plaintiff's head continued to bleed, so he sought medical care from a dorm officer. Id. at 23-26. Plaintiff told the dorm officer that the bleeding resulted from his slipping and falling; he did not mention the assault. Id. at 25. Plaintiff was given a pass to go to the Medical Unit. Id. at 27.

When he arrived at the clinic, Nurse Cole examined Plaintiff's injury, cleaned the wound and sent him back to the dorm. Id. at 28-29. Plaintiff allegedly reported that he was in a lot of pain, but was given no medication. Id. During the examination, Cole observed a bump and 1" superficial laceration on Plaintiff's head, but found him otherwise alert and oriented, able to move his arms and legs, and his pupils reactive to light. Cole decl. (Dkt. No.19-10) ¶ 10. Four days later, on March 15, 2004, Cole saw Plaintiff on a routine sick call at which he complained of a headache and cough for which she gave him ibuprofen and cough medicine. Id. ¶ 11. Despite her training in neurology and knowledge of his recent head injury, she did not refer Plaintiff to a doctor or perform other tests.

Plaintiff continued to experience headaches, sharp pains down his neck, blurry eyesight, and loss of appetite; on March 22 he came back to the clinic where he was examined by Dr. Rosenfeld,

---

[2] Plaintiff has since been released from Greene and is no longer in DOCS custody. Brew Dep. (Dkt. No. 19-4) at 4.

who knew of Plaintiff's prior injury.³ Rosenfeld decl. (Dkt. No. 19-9) ¶¶ 9-10. Rosenfeld conducted an examination testing Plaintiff's blood pressure, cranial pressure, balance, reflexes, cranial nerves, and Babinki sign.⁴ Rosenfeld's diagnosis was that Plaintiff may have had a concussion or brain contusion, or, "less likely," bleeding within the skull; he treated Plaintiff for what he allegedly believed to be the most likely cause, post-traumatic headache. Id. ¶¶ 11-13. He did not immediately order a CT scan. Rosenfeld dep. (Dkt. No. 19-6) 27-33.

Eight days later, Plaintiff, still experiencing pain and other symptoms, was taken to the Emergency Room at Albany Medical Center, where he was given a CAT scan and evaluated by a specialist. The scan showed Plaintiff to have developed a subdural hematoma, blood between the skull and brain causing pressure on the brain and surrounding tissues. Plaintiff underwent surgery the next day.

Plaintiff's expert, Dr. Alice So, reviewing Plaintiff's complained of symptoms at a later date, notes that "[t]he progressive symptoms since Brew sustained head trauma 2 weeks ago should have prompted a STAT CT scan of the head to rule out an intracranial bleed . . . . [A] posttraumatic intracranial bleed . . . is always a condition warranting emergency definitive diagnosis and management if it is suspected." So decl. (Dkt. No. 26-2) at 2. Dr. So contends that where such condition is suspected a scan "must be preformed STAT." Id. According to Dr. So, not ordering a scan promptly upon suspicion of intracranial bleed constitutes "conscious disregard." Id.

---

³Previously, medical staff had understood Plaintiff's injury to have resulted from his slipping and falling. At the time of Dr. Rosenfeld examination, Plaintiff reported that the injury resulted from his being struck on the head with a stick. Rosenfeld decl. ¶ 10.

⁴A neurologic examination based upon what the big toe does when the sole of the foot is stimulated.

**II.   STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). "The burden of establishing the nonexistence of a 'genuine issue' is on the party moving for summary judgment." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). Thus, summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); Beard v. Banks, 548 U.S. 521, 529 (2006) (citing Celotex Corp., 477 at 322). A court must "'resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing the judgment.'" Brown v. Henderson, 257 F.2d 246, 251 (2d Cir. 2001) (quoting Cifra v. General Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001)). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248. Only if it is clear that a trial is unnecessary should summary judgment be granted, id. at 255, and any doubt as to the existence of a genuine issue for trial should be resolved against the moving party. Celotex, 477 U.S. at 330 n.2 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-159 (1970)).

If the moving party meets its initial burden of demonstrating that no genuine issue of material fact exists for trial, the nonmovant "must do more than simply show that there is some

4

metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Corp., 475 U.S. 574, 586 (1986) (citations omitted). The nonmovant "must come forth with evidence sufficient to allow a reasonable jury to find in her favor." Brown, 257 F.3d at 251 (citation omitted). The nonmoving party "may not rely merely on allegations or denials in its own pleadings; rather its response must . . . set out specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e). To do so, "'the non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful.'" Golden Pac. Bancorp v. FDIC, 375 F.3d 196, 200 (2d Cir. 2004) (quoting D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir.1998)).

### III. DISCUSSION

#### A. Denial of Medical Care

The Eighth Amendment's prohibition against cruel and unusual punishment applies to the states through the Due Process Clause of the Fourteenth Amendment. U.S. CONST. amend. VIII; Robinson v. California, 370 U.S. 660, 666 (1962). Thus, "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well being." DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 199-200 (1989).

An Eighth Amendment claim comprises both objective and subjective elements. Blyden v. Mancusi, 186 F.3d 252, 262 (2d Cir. 1999). To survive summary judgment, Plaintiff must show that a material issue of fact exists as to both. The objective component requires the complained of injury to be serious enough to warrant constitutional protection. Id. The subjective element requires a defendant to have the necessary level of culpability, evidenced by actions demonstrating

"wantonness." Id. (citing Wilson v. Seiter, 501 U.S. 294, 298-99 (1991)).

"[D]eliberate indifference to serious medical needs" is sufficiently "wanton" to support an Eighth Amendment claim. Estelle v. Gamble, 429 U.S. 97, 104 (1976). "An official acts with the requisite deliberate indifference when that official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (quoting Farmer, 511 U.S. at 837). A plaintiff must allege this culpability to assert a claim entitled to relief. Smith v. Carpenter, 316 F.3d 178, 183-84 (2d Cir. 2003). The culpability required to state a claim of deliberate indifference to serious medical needs under the Eighth Amendment is equivalent to criminal recklessness, such that "'the prison official knows of and disregards an excessive risk to inmate health or safety.'" Hemmings v. Gorczyk, 134 F.3d 104, 108 (2d Cir. 1998) (quoting Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996)). The subjective element "entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer, 511 U.S. at 835. Thus,

> a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

Estelle v. Gamble, 429 U.S. at 106; see also Hathaway, 99 F.3d at 553.

### B.     Alleged Deliberate Indifference of Defendants Cole, Rosenfeld, and Prebble

Defendants concede for the purposes of the instant Motion, that Plaintiff suffered from a

6

sufficiently serious medical need to meet the objective prong of his Eighth Amendment claim. Mem. of Law in Supp. of Defs.' Mot. for Summ. J. (Dkt. No. 19-2) at 4. They contend, however, that Plaintiff has failed to raise a triable issue of fact as to Defendants' alleged deliberate indifference. Id.

### 1. *Nurse Cole*

Nurse Cole examined Plaintiff on March 11, 2004 shortly after his injury occurred. She examined him again on March 15, and he was complaining of ongoing severe headaches and a variety of other symptoms. Nothing in these facts suggests that Nurse Cole was "'aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and [that s]he dr[e]w the inference.'" Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (quoting Farmer, 511 U.S. at 837). Nothing in Nurse Cole's conduct suggests the mental culpability, equivalent to criminal recklessness, that is required to support an Eighth Amendment Claim of deliberate indifference. Plaintiff has failed to raise an issue of material fact that would allow any rational fact-finder to conclude that Nurse Cole acted with deliberate indifference; she is, therefore, entitled to summary judgment.

### 2. *Doctor Rosenfeld*

Doctor Rosenfeld examined Plaintiff on March 22, 2004, knowing that he suffered trauma to the head roughly two weeks prior. After examining Plaintiff, Dr. Rosenfeld concluded that one possible, though unlikely, cause of Plaintiff's suffering was bleeding within the skull. Rosenfeld decl. (Dkt. No. 19-9) ¶ 12. Nevertheless, he did not immediately order a CT scan. Plaintiff asserts that this omission constitutes deliberate indifference and seeks to defeat Defendants' Motion for summary judgment by entering the affidavit of an expert, Doctor Alice So. Pl.'s Mem of Law

Opposing Defs.' Summ. J. Mot. (Dkt. No. 26) at 3-5; So. decl. (Dkt. No. 26-2).

According to Dr. So, the mere suspicion of the possibility of such a condition should spur a physician to immediately order a CT scan. So decl. at 2. While Doctor So may indeed be correct that ordering a scan is the proper course, this fact does not suggest that Dr. Rosenfeld was deliberately indifferent to Plaintiff's medical needs in failing to do so.[5] Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106; Hathaway, 99 F.3d at 553. However, Dr. So also opines that "[A] posttraumatic intracranial bleed . . . is always a condition warranting emergency definitive diagnosis and management if it is suspected." So decl. (Dkt. No. 26-2) at 2. If believed, this statement, alongside Dr. Rosenfeld's admission that he was aware that intracranial bleed was a possible cause of Plaintiff's condition, Rosenfeld decl. (Dkt. No. 19-9) ¶¶ 11-13, could support the conclusion that Dr. Rosenfeld knew of a substantial risk of serious harm to Plaintiff and recklessly disregarded that risk in failing to order the scan. This is a triable issue of fact that a jury must decide. Summary judgment as to Dr. Rosenfeld is, therefore, denied.

### 3.    *Defendant Laura Prebble*

"[P]ersonal involvement is a 'prerequisite to an award of damages under § 1983.'" Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (citations omitted). "[M]ere 'linkage in the prison chain of command' is insufficient" to establish liability under § 1983. Richardson v. Goord, 347 F.3d

---

[5]Doctor So also claims that failure to order such a scan constitutes "conscious disregard." This statement asserts a legal conclusion and shall not be considered by the Court. See In re Initial Public Offering Sec. Litig., 174 F. Supp. 2d 61, 64-65 (S.D.N.Y.2001) (an expert may not give testimony stating ultimate legal conclusions.); see also Victor G. Reiling Assocs. v. Fisher-Price, Inc., 406 F. Supp. 2d 171, 173 (D.Conn.2005) (granting motion to strike expert witness testimony from defendant's motion for summary judgment to the extent that it stated legal conclusions).

431, 435 (2d Cir. 2003) (quoting Ayers v. Coughlin, 780 F.2d 205, 210 (2d Cir. 1985)). Plaintiff makes no specific factual allegations linking Defendant Prebble with any alleged unconstitutional conduct. Plaintiff concedes as much. Pl.'s Statement of Material Facts (Dkt. No. 26-1) at 11. Summary judgment is, therefore, granted in favor of Defendant Prebble.

### IV. CONCLUSION

Based on the foregoing discussion, it is hereby

**ORDERED**, that Defendants' Motion for summary judgment (Dkt. No. 19) is **GRANTED** with regard to Defendants Cole and Prebble, and **DENIED** with regard to Defendant Rosenfeld; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on the parties.

**IT IS SO ORDERED**.

DATED:     March 16, 2010
           Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge